### In re CARLSEN'S PETITION.

(District Court, E. D. Pennsylvania. May 27, 1904.)

1. HOSPITALS—DETENTION OF PATIENTS—HABEAS CORPUS—RETURN.

Where, on the arrival of a British ship, petitioner, a seaman, was admitted to a hospital through the intervention of the British consul, to be treated for an injury received on the vessel, allegations in a return to a writ of habeas corpus that he was not fully cured at the time he applied for his discharge from the hospital; that, if discharged, he would be likely to become a public charge, and that the master of the vessel had directed that he be detained until he might be returned to the port from which he came, were insufficient to justify the hospital authorities in restraining petitioner of his liberty.

2. SAME—ALIENS.

Where the immigration authorities were not parties to a writ of habeas corpus by an alien seaman to procure his discharge from a hospital to which he had been admitted for treatment for an injury sustained on board his vessel, the fact that he had never been admitted to the United States by such immigration authorities, and that under the immigration laws of the United States it was the duty of the master of the vessel to return him to the port from which he came, was no ground for refusing to discharge petitioner from detention at such hospital.

Joseph Hill Brinton, for relator.
Edward Brooks, Jr., for respondent.

J. B. McPHERSON, District Judge. The relator's petition sets out the following facts:

"That he is a minor of the age of about nineteen years, and a subject of the King of Norway and Sweden, and as such on or about November 8, 1903, shipped and hired as a seaman on board the British steamship Teviotdale.

"That the said steamship, with your petitioner on board, proceeded thence on her voyage, and arrived at the port of Philadelphia on or about February 16, 1904. On said date, whilst said vessel was lying in the port of Phila-

delphia, your petitioner, pursuant to the order of his superior officers on board' said vessel, placed himself in a position of exposure, whereby the fingers of his hands were frozen. Later in the same day, at the request of the British consul, Wilfred Powell, resident in Philadelphia, your petitioner was sent to· and admitted in the St. Agnes Hospital, of said city, where he received medical treatment for the injuries thus sustained.

"Your petitioner has since remained at the said hospital undergoing treatment for the said injuries, and on May 11, 1904, requested the proper authorities of said hospital for a discharge, so that he might institute legal proceedings against the said vessel for the recovery of damages for the injuries sustained by him as aforesaid, but said request was denied on the ground that no discharge or leave of absence could be given without the consent of the said consul, which said consul refused to give, alleging that your petitioner was, by virtue of his shipment, a British subject; therefore under his exclusive jurisdiction.

"Your petitioner avers that he is illegally and wrongfully deprived of his liberty by the mother superior and other officials of said hospital, contrary to the Constitution and laws of the United States, and prays that a writ of habeas corpus may be forthwith issued directed to the mother superior, resident at and in charge of the St. Agnes Hospital, Philadelphia, commanding her to bring before your honorable court his, your petitioner's, body, to do and abide such order as the court may direct."

The material parts of the return made by the mother superior of the hospital are as follows:

"That your respondent is credibly informed and verily believes that the petitioner, Adolph Carlsen, is an alien, and that he shipped and hired as a seaman on board the British steamship Teviotdale at Antwerp, in the kingdom of Holland.

"That on or about February 16, 1904, the said Carlsen, under an arrangement with Wilfred Powell, Esquire, his Britannic Majesty's consul residing at Philadelphia, was sent by the master· or captain of said steamship Teviotdale to the St. Agnes Hospital, and admitted therein as a patient, with instructions that said Carlsen should be detained there until cured, and, when ready to be discharged, should be turned over to .the custody of said Wilfred Powell, to the end that he be returned to the port of shipment. That at the time of admittance said Carlsen was suffering with a severe case of frost-bitten hands or fingers, and unable to perform his duties as seaman in said steamship. That since said time said Carlsen has been undergoing medical treatment for said injuries, and has since been supported and maintained at said hospital at the expense of the master and owners of said steamship Teviotdale. That said Carlsen is still suffering from the effects of frostbite, and is not well enough to be discharged from said hospital. That the said Carlsen·is a person likely to become a public charge if discharged from said hospital by reason of his present physical condition.

."That your respondent is credibly informed and verily believes that under the laws of Great Britain it is the duty of masters and owners of British vessels to provide at their own expense medical treatment in hospitals on shore for disabled seamen where injured in service on the ship. That under an act of Congress of March 3, 1903, entitled 'An act to regulate the immigration of aliens into the United States,' the master of all vessels bringing aliens to this country is required to detain said aliens on said vessels, and to return such aliens to the countries whence they respectively came, and for neglect to detain them thereon or neglect to return them to the foreign port from which they came such master or owner shall be deemed guilty of a misdemeanor, and shall, on conviction, be punished by a fine not less than three hundred dollars for each and every such offense.

"That on or about February 24, 1904, the said Carlsen was given his discharge from said steamship Teviotdale on account of said disability, and since then has been detained at the request of said master at said St. Agnes Hospital for treatment, to the end that, when cured and ready to be discharged, .he might be turned over to the British consul, to be returned to the foreign port from which he came.

"That your respondent is credibly informed and verily believes that said Carlsen has never been duly admitted into the United States by the commissioner of immigration, or by any immigrant inspector.

"That your respondent is credibly informed and verily believes that to give said Carlsen his discharge from said hospital would be a menace to his health, and possibly his life, and in violation of the above act of Congress. That the friends and legal advisers of said Carlsen have never been denied access to him, and your respondent is advised that it is unnecessary that said Carlsen be discharged from said hospital in order to institute legal proceedings against said vessel, particularly in view of the fact that he is a minor, and that such proceedings must be instituted by a guardian or next friend.

"That your respondent is credibly informed and verily believes that the commissioner of immigration is opposed to the release of said Carlsen on the ground that he is an alien, that he has never been duly admitted into the United States, and that by reason of his present physical condition he is a person likely to become a public charge.

"Your respondent humbly prays that, if your honorable court should make an order discharging the said Carlsen from St. Agnes Hospital, that the said Carlsen be turned over to the custody of the commissioner on immigration, in order that there may be no violation of the immigration laws, to the end that the master, owners, or agents of said steamship Teviotdale may not become liable for the penalty provided for by the act of Congress.

"Your respondent therefore, in answer to the command contained in the writ of habeas corpus to her directed, brings before your honorable court the body of the petitioner, Adolph Carlsen, to do and abide such order as the court may direct."

It is clear that the respondent's return sets up no legal justification for interfering with the relator's liberty. If he desires to leave the hospital, he has the right to do so, no matter how imprudent the step may be, nor how his health may be affected thereby, and although the British consul may disapprove. The question suggested in the return concerning the effect of the immigration laws cannot arise on this record, to which the proper official is not a party.

It is therefore ordered that the relator be discharged from confinement in the St. Agnes Hospital; but, in order that the commissioner of immigration may be enabled to take such steps as he may be advised are desirable, it is also ordered that the hospital authorities give him 24 hours' notice of the time when the relator will be set at liberty.